*United States v. Westlake Services, LLC, et al.* (C.D. Cal.), Civil No. 2:17-cv-07125

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES AND WILSHIRE COMMERCIAL CAPITAL, LLC D/B/A WILSHIRE CONSUMER CREDIT**

## I.   INTRODUCTION

1.   This Settlement Agreement ("Agreement") is entered into between Plaintiff, the United States of America ("the United States"), through the Department of Justice, and Defendants Westlake Services, LLC d/b/a Westlake Financial Services and Wilshire Commercial Capital, LLC d/b/a Wilshire Consumer Credit (collectively referred to as "Defendants"), through their authorized representatives.  The United States and the Defendants are referred to herein as the "Parties."

2.   This Agreement resolves the claims and causes of action asserted in the United States' lawsuit, *United States v. Westlake Services, LLC, et al.*, Civil No. 2:17-cv-07125, filed in the United States District Court for the Central District of California against the Defendants on September 27, 2017, which alleges that the Defendants violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, by repossessing motor vehicles from "SCRA-protected servicemembers"[1] without court orders (hereinafter "Civil Action").

---

[1] For purposes of this Agreement, the term "SCRA-protected servicemember" includes servicemembers as defined in 50 U.S.C. § 3911(1) and (2) and 50 U.S.C. § 3952 or 50 U.S.C. § 3953. Servicemembers with loans that are covered by 50 U.S.C. § 3952 are granted protection against repossession during the period of military service.   Servicemembers with loans that are covered by 50 U.S.C. § 3953 are also granted an additional period of protection for one year after the period of military service.  The SCRA also grants additional periods of protection for reservists ordered to report for military service and persons ordered to report for induction.  *See* 50 U.S.C. § 3917.  Therefore, for purposes of this Agreement, an "early alert period" shall be included in the periods of protection for servicemembers at the time of repossession.  However, since such periods are not included in the definition of "military service" in 50 U.S.C. § 3911, they are not considered military service at the time of origination or payment of a deposit or installment.

## II.      RECITALS

3.      Defendant Westlake Services, LLC d/b/a Westlake Financial Services (hereinafter referred to as "Westlake") is a California limited liability company with its headquarters located at 4751 Wilshire Boulevard, Los Angeles, California, in the Central District of California.

4.      Defendant Wilshire Commercial Capital, LLC d/b/a Wilshire Consumer Credit (hereinafter referred to as "Wilshire") is a California limited liability company with its headquarters located at 4751 Wilshire Boulevard, Los Angeles, California, in the Central District of California.  Wilshire is a wholly-owned subsidiary of Westlake. Wilshire represents that it does not have any subsidiaries.

5.      This Agreement covers all loans or deficiency balances originated, acquired, and/or serviced by the Defendants or any of their predecessors, acquired companies, or successor entities.  For purposes of this Agreement, loans are defined to include retail installment sales contracts.

6.      The Parties agree, and the United States believes that it is in the public's best interest, that the Civil Action should be resolved amicably and without further litigation.

7.      To avoid the delay, uncertainty, inconvenience and expense of protracted litigation of the United States' claims, and in consideration of the mutual promises and obligations set forth below, the Parties agree and covenant to the following material terms and conditions:

## III.      STATEMENT OF CONSIDERATION

8.      In consideration of, and consistent with, the terms of this Agreement, the Parties will jointly stipulate for dismissal of the lawsuit entitled *United States v. Westlake*

EXHIBIT A
4

*Services, LLC, et al.*, Civil No. 2:17-cv-07125, filed in the United States District Court for the Central District of California, as set forth in Paragraph 44.   The Parties agree and acknowledge that this consideration is adequate and sufficient.

### IV.   TERMS AND CONDITIONS

### A.   PROHIBITED CONDUCT

9.   Except under the circumstances described below, the Defendants and their officers, employees, agents, and representatives (including contractors and vendors that conduct repossessions on behalf of the Defendants) will not repossess an SCRA-protected servicemember's motor vehicle without first obtaining a court order or valid SCRA waiver that complies with Paragraph 10(e) below.[2]

### B. COMPLIANCE WITH THE SCRA
### AND SCRA POLICIES AND PROCEDURES

10.   Within sixty (60) calendar days of the effective date of this Agreement, the Defendants shall develop enhanced SCRA Policies and Procedures for Motor Vehicle Repossessions in compliance with 50 U.S.C. § 3952(a) and 50 U.S.C. § 3953.  These policies and procedures must include the following provisions:

a.   In addition to any other reviews Defendants may perform to assess eligibility under the SCRA, (i) no more than two (2) business days before they refer a motor vehicle loan for repossession; (ii) between two (2) and five (5) business days after they (or their agents, including contractors and vendors that conduct repossessions on behalf of Defendants) obtain possession of the motor vehicle; and (iii) no more than two (2) business

---

[2] Nothing in this Agreement shall preclude the Defendants from offering greater protections to servicemembers than those afforded by the Agreement or the SCRA.

3

days before they (or their agents, including contractors and vendors that conduct repossessions on behalf of Defendants) dispose of the motor vehicle, Defendants will determine whether borrowers are SCRA-protected servicemembers by: (1) reviewing any military service information (including orders) they have received from borrowers and (2) searching the Department of Defense Manpower Data Center ("DMDC") for evidence of SCRA eligibility by either (a) last name and social security number or (b) last name and date of birth.

b.    If the Defendants are informed via military service information received from a borrower, or via the periodic electronic check of the DMDC database described above, that the borrower is an SCRA-protected servicemember, they shall neither refer the loan for repossession nor conduct the repossession themselves without first obtaining a court order or valid written waiver as provided in 50 U.S.C. § 3918.

c.    If the Defendants discover, after obtaining possession but before disposing of the motor vehicle, that the borrower is an SCRA-protected servicemember, within twenty-four (24) hours the Defendants shall attempt to verbally contact the borrower and offer to arrange to return the vehicle and shall reverse on the borrower's account all of the charges resulting from the repossession.  The Defendants shall also correct any negative credit reporting related to the repossession.  If the Defendants cannot make contact with the borrower within twenty-four (24) hours, the Defendants shall cause the vehicle to be returned to the location where possession was taken, unless: (1) return to such location presents a significant risk of damage to

the vehicle; (2) return to such location presents a significant risk that the vehicle will be impounded; (3) the borrower has previously informed Defendants that the vehicle has been abandoned; or (4) the vehicle was recovered under circumstances suggesting that the vehicle had been abandoned.  If the vehicle is not returned to the borrower within twenty-four (24) hours, the Defendants shall make no fewer than three (3) additional attempts to reach the borrower based upon contact information in their files, and return the vehicle within twenty-four (24) hours of a borrower's request for return, without charging any repossession-related fees.  The vehicle shall not be sold or otherwise disposed of until the contact attempts referenced in this subparagraph have been made and the Defendants have obtained a court order or a valid written waiver as provided in 50 U.S.C. § 3918.

d.     If the Defendants pursue a repossession or foreclosure action in court and the borrower does not make an appearance in the case, the Defendants will file an affidavit of military service with the court as required by Section 3931(b)(1) of the SCRA, 50 U.S.C. § 3931(b)(1).  Before seeking entry of default, the Defendants will search the DMDC and review information in their possession or control to determine if the borrower is SCRA-protected. If Defendants learn that the borrower is SCRA-protected, Defendants will: (1) file an affidavit stating that "the defendant is in military service" before seeking default judgment; and (2) attach the most recent military status report from the DMDC or a copy of the military orders or other documentation to the affidavit.

EXHIBIT A
7

e.   The Defendants cannot rely on a servicemember's waiver of rights under Section 3952(a) or 3953 of the SCRA unless they obtain a written agreement as provided in Section 3918 of the SCRA, 50 U.S.C. § 3918.  If the Defendants initiate the waiver process with the servicemember, they must do so at least thirty (30) calendar days in advance of any anticipated repossession by sending a notice that prominently incorporates the language and layout of the form attached as Exhibit A and a copy of the proposed waiver to the servicemember.  If the servicemember initiates the waiver process by offering to voluntarily surrender the vehicle or indicating an intent to abandon the vehicle, the Defendants must provide a copy of the notice of the type described in Exhibit A but may conduct the repossession at any point after receiving a signed waiver.

f.   The Defendants may take possession of a motor vehicle that has been impounded by a non-related third-party upon receiving notice of the impoundment even when the borrower is an SCRA-protected servicemember.  The Defendants must, however, provide notice to the servicemember that they have taken possession and must not dispose of the vehicle until they have made reasonable efforts to contact the servicemember and the Defendants have obtained a court order or a valid written waiver as provided in 50 U.S.C. § 3918.

11.   Within sixty (60) calendar days of the effective date of this Agreement, the Defendants shall develop enhanced SCRA Policies and Procedures for Providing SCRA Relief in their motor vehicle lending lines of business.  This includes, but is

EXHIBIT A
8

not limited to, policies regarding reducing interest rates under Section 3937.  The Policies and Procedures shall contain the following provisions:

a.    The Defendants shall accept servicemembers' notice of military status pursuant to the SCRA (including provisions of the SCRA that require notice in order to receive relief) made via facsimile, United States Postal Service First Class Mail (postage pre-paid), overnight mail, or electronically.

b.    When the Defendants receive notice from a servicemember of military status pursuant to the SCRA, within sixty (60) calendar days, they shall review all the servicemember's loans, regardless of type of obligation, and they shall determine the servicemember's eligibility for interest[3] rate relief pursuant to the SCRA on all loans.  If the servicemember is determined to be eligible, the relief will be applied retroactively to the first day of eligibility.

c.    Within twenty-one (21) calendar days after determining a servicemember's eligibility for relief pursuant to the SCRA, Defendants shall notify the servicemember in writing[4] of their determination.  If the Defendants grant relief, the Defendants shall notify the servicemember in writing of the specific terms of the relief provided.  If the Defendants deny relief, the

---

[3] Under Section 3937 of the SCRA, "interest" includes "service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability."  50 U.S.C. § 3937(d)(1).

[4] For all written notices to servicemembers required by the Agreement, Defendants shall use either: (1) the email address or mailing address chosen by the borrower as the primary means of communication either by previous election or in the most recent communication with Defendants; or (2) if, no primary means of communication has been chosen, the mailing and e-mail address listed in the servicemember's most recent communication with Defendants, in addition to the servicemember's current mailing address in Defendants' servicing records (if different).

Defendants shall also notify the servicemember in writing of the reason(s) for the denial, and they shall ensure that such servicemember is given an opportunity to provide additional documentation or information to establish eligibility for relief pursuant to the SCRA.

d.    With respect to forms of relief for which the SCRA requires provision of military orders, in the event that a servicemember gives the Defendants notice of military status pursuant to the SCRA, but fails to provide a copy of military orders entitling him or her to the relief, the Defendants shall search the DMDC to confirm eligibility.  If the DMDC records provide dates of service that confirm eligibility, the Defendants shall provide the relief required by the SCRA for the dates indicated by the DMDC and shall notify the servicemember that the servicemember may submit additional documentation to establish eligibility dates if the servicemember disagrees with the dates provided by the DMDC.  If the DMDC records do not confirm eligibility, the Defendants may deny the relief if they inform the servicemember in writing that he or she is not eligible for the relief unless he or she provides a copy of documents establishing military service.  Such documents will include any document prepared exclusively by a branch of the military, the Department of Defense, or a borrower's commanding officer that indicates that the borrower is on active duty (e.g., active duty orders, change of station orders, DD-214 forms, letters from commanding officers, etc.).  The Defendants shall request this additional information before making a final determination that the servicemember is not eligible for relief.

8

e.   The Defendants shall not require that any military order submitted have a specific end date for the period of military service.  The Defendants also shall not require that any military order submitted specify the date upon which the servicemember first entered active duty for this period of service.

f.   The Defendants shall provide SCRA relief beginning on the earliest eligible date provided in the orders or as provided by the DMDC website.  However, if the earliest date provided indicates that the servicemember was on active duty at the time of loan origination, the Defendants shall notify the servicemember and provide the servicemember a reasonable opportunity to provide documentation showing that the servicemember was not on active duty at the time of loan origination.

g.   The Defendants shall be permitted to discontinue relief granted pursuant to the SCRA only after the Defendants search the DMDC and the DMDC reports that the servicemember is not in military service (or in any SCRA-protected period after the termination of military service).[5]  Defendants shall notify the servicemember in writing of the discontinuation, and they shall ensure that such servicemember is given an opportunity to provide additional documentation or information to reestablish eligibility for relief pursuant to the SCRA.  The Defendants may choose to provide relief for a longer period than is required by this subparagraph.

---

[5] In the case where an SCRA-protected servicemember provides the Defendants with valid military orders that include an end date of military service inconsistent with that appearing on the DMDC website, the Defendants shall not discontinue the relief until the latter of the two end dates has expired or they obtain confirmation from the borrower that he or she has ended military service.

EXHIBIT A

h.      The Policies and Procedures required by this Paragraph shall not excuse the Defendants from providing, or allow the Defendants to delay providing, forms of relief for which the SCRA does not require a notification from a servicemember.  For example, the Policies and Procedures required by this paragraph shall not affect the timing requirements of Paragraph 10.

12.   No later than sixty (60) calendar days after the effective date of this Agreement, the Defendants shall designate specific employees (hereinafter "designated employees") who have been specifically trained on the protections of the SCRA and who are responsible for the intake of and response to servicemembers' inquiries regarding the SCRA.  The Defendants shall ensure that they have a designated telephone number, and electronic mail address, at which servicemembers may reach a designated employee, who will address questions or concerns regarding the SCRA.  The Defendants shall also include a page on their websites detailing eligibility for, and relief provided by, the SCRA, and providing the designated telephone number and electronic mail address to obtain SCRA relief, or raise questions or concerns regarding such relief.

13.   No later than sixty (60) calendar days after the effective date of this Agreement, the Defendants shall provide a copy of the proposed enhanced SCRA Policies and Procedures required under Paragraphs 10 and 11 to counsel for the United States.[6] The United States shall respond to Defendants' proposed enhanced SCRA Policies and Procedures within forty-five (45) calendar days of receipt.  If the United States

---

[6] All materials required by this Agreement to be sent to counsel for the United States shall be sent by commercial overnight delivery addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street, N.W., 7th Floor, Washington, DC 20006, Attn: DJ 216-12C-4.

EXHIBIT A

objects to any part of the Defendants' SCRA Policies and Procedures, the parties shall confer to resolve their differences.  The Defendants shall begin the process of implementing the SCRA Policies and Procedures within ten (10) calendar days of approval by the United States.

14.   If, at any time during the term of this Agreement, the Defendants propose to materially change their SCRA Policies and Procedures described herein, they shall first provide a copy of the proposed changes to counsel for the United States.  If the United States does not deliver written objections to the Defendants within forty-five (45) calendar days of receiving the proposed changes, the changes may be implemented.  If the United States makes any objections to the proposed changes within the forty-five (45)-day period, the specific changes to which the United States objects shall not be implemented until the objections are resolved pursuant to the process described in Paragraph 13.

## C.      TRAINING

15.   The Defendants shall provide enhanced SCRA compliance training to any employees who: (a) provide customer service to servicemembers in connection with the servicing of motor vehicle loans, (b) have significant involvement in servicing motor vehicle loans, including the ability to reduce interest rates for servicemembers as contemplated by the terms of the SCRA, or (c) have significant involvement in the repossession or sale of motor vehicles, (hereinafter together "covered employees") within forty-five (45) calendar days after the Defendants' training program is approved by the United States pursuant to Paragraph 17.  The Defendants shall provide to each covered employee: (a) training on the terms of the

11

SCRA specific to the employee's responsibilities associated with that employee's position; (b) training on the terms of the Defendants' enhanced SCRA Policies and Procedures (both those required pursuant to Paragraphs 10 and 11, and all others adopted by the Defendants) specific to the employee's responsibilities associated with that employee's position; (c) training on the terms of this Agreement specific to the employee's responsibilities associated with that employee's position and his or her responsibilities and obligations under the SCRA; and (d) the contact information for the designated employees described in Paragraph 12.  The Defendants shall also follow these training procedures for each of their employees who subsequently becomes a covered employee within thirty (30) calendar days of his or her hiring, promotion or transfer.

16.  During the term of this Agreement, the Defendants shall provide annual SCRA training, with the same content as described in Paragraph 15, to covered employees with respect to their responsibilities and obligations under the SCRA, the SCRA Policies and Procedures and the terms of this Agreement.

17.  Within forty-five (45) calendar days of the United States' approval of the SCRA Policies and Procedures pursuant to Paragraphs 10 and 11, the Defendants shall provide to the United States the curriculum, instructions, and any written material included in the training required by Paragraphs 15 and 16.  The United States shall have forty-five (45) calendar days from receipt of these documents to raise any objections to the Defendants' training materials, and, if they raise any, the Parties shall confer to resolve their differences.

18.  The covered employees may undergo the training required by Paragraphs 15 and 16 via live training, computer-based training, web-based training, or via interactive

EXHIBIT A
14

digital media.  If the training is conducted in any format other than live training, the Defendants shall ensure that covered employees have the opportunity to have their questions answered by a company contact that the Defendants identify as having SCRA expertise within two (2) business days of the training.  Any expenses associated with the training program required by Paragraphs 15 and 16 shall be borne by the Defendants.

19.   The Defendants shall secure a signed statement in the form attached as Exhibit B[7] from each covered employee at the training required by Paragraphs 15 and 16 acknowledging that he or she has received, read, and understands the SCRA Policies and Procedures specific to the employee's responsibilities associated with the loan being serviced, has had the opportunity to have his or her questions about these documents answered, and agrees to abide by them.  For the duration of this Agreement, copies of those signed statements shall be provided to the United States upon request.  The Defendants shall also certify in writing to counsel for the United States that the covered employees successfully completed the training required by Paragraphs 15 and 16.

### D. COMPENSATION

20.   The Defendants will deposit in an interest-bearing escrow account the sum of $700,000 to fund the compensation payments required by Paragraph 23.  Title to this account will be in the name of "Westlake Services, LLC d/b/a Westlake Financial Services and Wilshire Commercial Capital, LLC d/b/a Wilshire Consumer Credit for the benefit of aggrieved persons pursuant to the Settlement

---

[7] The electronic signature of a covered employee shall be deemed satisfactory for purposes of verifying completion of the training required under this Agreement.

13

Agreement in Civil Action No. 2:17-cv-07125." The Defendants will provide

written verification of the deposit to the United States within fifteen (15) calendar

days of the effective date of this Agreement. Any interest that accrues will become

part of the Settlement Fund and be used and disposed of as set forth herein. If the

compensation payments required by Paragraph 23 total more than $700,000, the

Defendants will deposit into the escrow account all necessary additional funds to

make payments before the deadlines established by Paragraph 28. Any taxes, costs,

or other fees related to the escrow account shall be paid by the Defendants.

21.    The United States has determined that the Defendants conducted 70 motor vehicle

repossessions between October 21, 2011 and October 21, 2016 that were not in

compliance with the SCRA. The United States has previously provided the list of

these repossessions to the Defendants.

22.    Within thirty (30) calendar days of the effective date of this Agreement, the

Defendants shall provide to the United States an electronically searchable list of all

their repossessions between October 22, 2016 and the effective date of this

Agreement. The United States shall run this list through the DMDC database and

undertake any independent investigation it deems appropriate to identify any

additional repossessions that violated the SCRA. The United States shall provide

the Defendants with the list of additional repossessions that violated the SCRA

within thirty (30) calendar days of receiving the Defendants' complete repossession

list. In the event the Defendants object to the United States' list, the Defendants

shall be afforded thirty (30) calendar days to produce evidence of compliance to the

United States. After considering in good faith all evidence produced by the

Defendants, the United States shall make a final determination of the additional

14

repossessions that violated the SCRA within thirty (30) calendar days of the Defendants' production of evidence.

23. For each repossession identified pursuant to Paragraphs 21 and 22, the Defendants shall provide the following compensation:

    a.    an amount of $10,000;

    b.    any lost equity in the repossessed motor vehicle, as calculated by: subtracting any outstanding principal, interest, and other amounts owing by the borrowers (excluding any fees associated with repossession), plus any liens at the time of repossession and any disbursements made to the servicemember or a third-party other than a lien holder from the proceeds of the repossession sale (exclusive of any fees associated with the repossession) from the retail value of the motor vehicle at the time of repossession as identified in the National Automobile Dealers Association ("NADA") Guide; and

    c.    interest accrued on this lost equity, calculated from the date of the repossession sale until the date payment is issued, at the rate set forth in 28 U.S.C. § 1961.

The Defendants shall provide the United States with all records used to make the payment calculations described in this paragraph for the United States' review and approval.

24. The amounts described in Paragraph 23(a) shall be paid entirely to the servicemember-borrower on the note securing the motor vehicle who signs the Declaration at Exhibit C-1 and the Release at Exhibit C-2.  The amounts described in Paragraph 23(b) and (c) shall be distributed equally among all borrowers

15

(including non-servicemember borrowers) on the title to the motor vehicle who sign the Release at Exhibit C-2.  In cases where Defendants have already taken remedial actions with respect to a repossession identified pursuant to Paragraphs 21 and 22, the United States shall consider such remedial actions and adjust the compensation to be awarded.[8]

25.   The Defendants will conduct the settlement administration activities as set forth in Paragraphs 25-31.  The Defendants shall bear all costs and expenses of settlement administration.  The Defendants shall work cooperatively with the United States in the conduct of their activities, including reporting regularly to and providing all reasonably requested information to the United States.

26.   The Defendants shall establish and maintain throughout the period of this Agreement, multiple cost-free means for affected servicemembers and co-borrowers to contact them, including an electronic mail address, a webpage, and a toll-free telephone number.

27.   For repossessions identified pursuant to Paragraphs 21 and 22, the Defendants shall notify each identified servicemember by letter (using wording mutually agreeable to the Defendants and the United States) within sixty (60) calendar days of the effective date of this Agreement.   For repossessions where money is due to a non-servicemember owner pursuant to Paragraph 24, the Defendants shall notify each identified non-servicemember owner by letter (using wording mutually agreeable to

---

[8] In determining the amount of compensation due to any servicemember or co-borrower pursuant to Paragraph 23, the United States will credit any monetary compensation or other remediation efforts, including returning the motor vehicle to the borrower, already provided to any servicemember or co-borrower for alleged compliance issues pursuant to Section 3952 or Section 3953 of the SCRA and arising from the same motor vehicle loan.

EXHIBIT A

the Defendants and the United States) within fifteen (15) calendar days of receiving the Declaration from the servicemember-borrower.  The Defendants shall provide the United States with samples of all letters, and receive the United States' approval of the sample letters, before mailing any letter required by this paragraph, and all letters mailed pursuant to this paragraph shall be accompanied by the Declaration at Exhibit C-1 and/or the Release at Exhibit C-2.  The Defendants shall adopt effective methods, as requested by the United States, to make contact with, and obtain a response from, each identified servicemember and non-servicemember borrower.

28.    The Defendants shall issue and mail compensation checks no later than twenty-one (21) calendar days after receipt of a signed Declaration and Release.  The Defendants shall skip trace and redeliver any payment that is returned as undeliverable, or that is not deposited or cashed within six (6) months.

29.    The Defendants shall, for a period of five (5) years following the effective date of this Agreement, provide the United States with a monthly accounting of all declarations received, checks issued (including copies of issued checks), and notifications without responses or that were returned as undeliverable.  The Defendants shall report any uncashed checks in accordance with state unclaimed property laws.

30.    Any money not distributed from the escrow account, including accrued interest, within five (5) years of the date the initial notifications are sent to persons eligible for the compensation payments required by Paragraph 23 will be distributed to the United States Treasury in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

31.     The Defendants will not be entitled to a set-off, or any other reduction, of the amount of compensation payments required by Paragraph 23 because of any debts owed by the recipient, except in the calculation of lost equity as provided by Paragraph 23(b).  The Defendants also will not refuse to make a payment based on a release of legal claims, arbitration agreement, or loan modification previously signed by any such recipient.

32.     In the event that the United States has reason to believe that the Defendants are not materially complying with the terms of Paragraphs 20-31 of this Agreement, the Defendants shall present for review and determination of non-objection a course of action to effectuate their material compliance with Paragraphs 20-31 of this Agreement.  The United States shall make a determination of non-objection to the course of action or direct the Defendants to revise it.  In the event that the United States directs revisions, the Defendants shall make the revisions and resubmit the course of action to the United States within thirty (30) days.  Upon notification that the United States has made a determination of non-objection, the Defendants shall implement the course of action.

33.     No individual may obtain review by the Parties of the identifications made, and payments disbursed, pursuant to Paragraphs 21-32.

## E.     CREDIT REPAIR AND OTHER RELIEF

34.     Concurrent with providing financial compensation to the servicemember-borrower, the Defendants must request, if not already done, that all three (3) major credit bureaus and any other credit bureaus to which the Defendants report delete trade lines for accounts belonging to the servicemember(s) and any co-borrower(s) attributable specifically to the wrongful repossessions.  Further, the Defendants

shall not pursue, must indemnify the servicemember and his or her co-borrower(s) against any third-party's pursuing and must refund any amounts that the servicemember and his or her co-borrowers have paid toward any deficiency that was remaining on the loan after a repossession.

35.     Every month for a period of five (5) years following the effective date of this Agreement, the Defendants shall provide the United States with an accounting of all credit entries repaired.

### F.      CIVIL PENALTY

36.     Within thirty (30) calendar days of the effective date of this Agreement, the Defendants shall pay a total of Sixty Thousand Seven Hundred and Eighty-Eight Dollars ($60,788.00) to the United States Treasury as a civil penalty pursuant to 50 U.S.C. § 4041(b)(3) and 28 C.F.R. § 85.5, to vindicate the public interest.  The payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

### G.      REPORTING, RECORD-KEEPING, AND MONITORING

37.     For the duration of this Agreement, the Defendants shall retain all records relating to their obligations hereunder, including their records with respect to all loans for which a servicemember has sought SCRA relief, whether that relief was granted by the Defendants, all records involving repossessions, and all records relating to compliance activities as set forth herein.  The United States shall have the right to review and copy any such records, including electronic data, upon reasonable request during the term of this Agreement.

38.     During the term of this Agreement, the Defendants shall notify counsel for the United States in writing every six (6) months of receipt of any SCRA or military-

related complaint.  The Defendants shall provide a copy of any written complaints with the notifications.  The Defendants will incorporate into their SCRA Policies and Procedures a requirement that all personnel, upon receiving any oral SCRA complaint, shall notify the designated employees who have been specifically trained and are responsible for the intake of and response to SCRA complaints pursuant to Paragraph 12.  Whether regarding a written or oral SCRA complaint, the notification to the United States shall include the full details of the complaint, including the complainant's name, address, and telephone number, and the full details of all actions the Defendants took to resolve the complaint.  The Defendants shall also promptly provide the United States all information it may request concerning any such complaint.  If the United States raises any objections to the Defendants' actions, the Parties shall meet and confer to consider appropriate steps to address the concerns raised by the United States' review.

## H.      IMPLEMENTATION, ENFORCEMENT, AND DISMISSAL OF UNDERLYING CIVIL ACTION

39.     The United States may review compliance with this Agreement at any time.  The Defendants agree to cooperate with the United States in any review of compliance with this Agreement.  Upon reasonable notice, the Defendants shall permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Agreement.

40.     Should the Defendants materially breach any provision of this Agreement and fail to cure such breach in accordance with this Agreement, the Parties agree that upon any such claim of breach as made by the United States, the United States may move to restore the Civil Action to the active docket of this Court for purposes of

resolution of any such claim of breach. In the event of such a claim of breach as made by the United States, the Defendants consent to and agree not to contest the Government's motion to restore the Civil Action to the Court's active docket. Alternatively, the United States may bring a civil action for breach of this Agreement or any provision thereof, in the United States District Court for the Central District of California. The United States may in such action seek to have the Court impose any remedy authorized at law or equity. This Court shall serve as the exclusive jurisdiction and venue for any dispute concerning this Agreement. The Defendants consent to and agree not to contest the exercise of personal jurisdiction over the Defendants by this Court. The Parties further acknowledge that venue in this Court is appropriate and agree not to raise any challenge on this basis.

41.    Before taking the steps outlined in Paragraph 40, the United States shall first provide the Defendants notice of any breach in writing and shall afford Defendants 30 days from the date of mailing to cure the default.[9]

42.    In the event the United States reinstates the Civil Action as contemplated in Paragraph 40, or any other civil action is commenced to remedy breach of this Settlement Agreement, the United States may seek the following: 1) an order mandating specific performance of any term or provision in this Settlement Agreement, without regard to whether monetary relief would be adequate; 2) an award of reasonable attorneys' fees and costs incurred in bringing an action to remedy breach of this Settlement Agreement; and 3) any additional relief that may

---

[9] All materials required by this Agreement to be sent the Defendants shall be sent by commercial overnight delivery addressed as follows: Chief Compliance Officer, Westlake Financial Services, 4751 Wilshire Boulevard Suite 100, Los Angeles, CA 90010.

EXHIBIT A

be authorized at law or equity.  If the Civil Action is reinstated or any other such

civil action is filed, the Defendants expressly agree not to count the time during

which this Settlement Agreement is in place, or use the terms or existence of this

Settlement Agreement, to plead, argue or otherwise raise any defenses under

theories of claim preclusion, issue preclusion, statute of limitations, estoppel,

laches, or similar defenses.

43.     Failure by the United States to enforce any provision of this Agreement shall not

        operate as a waiver of the United States' right or ability to enforce any other

        provision of this Agreement.

44.     Within 15 days of the Defendants providing written verification to the United States

        of (1) the deposit of funds in to an escrow account, as set forth in Paragraph 20 and

        (2) the payment of the civil penalty as set forth in Paragraph 36, the Parties shall file

        a stipulation for dismissal of the underlying Civil Action, subject to its

        reinstatement as set forth in Paragraph 40 above.

## I.     SCOPE OF SETTLEMENT AGREEMENT

45.     The provisions of this Agreement shall apply to the Defendants and any

        predecessors, acquired companies, or successor entities.  It shall also apply to the

        officers, employees, agents, representatives, assigns, successors-in-interest, and all

        persons and entities in active concert or participation with all of those entities,

        including with respect to any loans they acquired from October 21, 2011 to the

        effective date of this Agreement.

46.     In the event that the Defendants are acquired by or merge with another entity, the

        Defendants shall, as a condition of such acquisition or merger, obtain the written

agreement of the acquiring or surviving entity to be bound by any obligations remaining under this Agreement for the remaining term of this Agreement.

47. This Agreement releases only the claims for violations of Section 3952(a) and Section 3953 of the SCRA addressed in the Complaint or identified in this Agreement. This Agreement does not release any other claims that may be held or are currently under investigation by any federal agency, or any claims that may be pursued for actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency (FBA), as defined in 12 U.S.C. § 1813(q), against the Defendants, any of their affiliated entities, and/or any of their institution-affiliated parties, as defined by 12 U.S.C. § 1818 or any other statute or regulation. This Agreement does not release any claims that the United States may have against Credit Union Leasing of America, CULA Holdings, Inc., CULA, LLC or Western Funding Incorporated, or any of Westlake's subsidiaries other than Wilshire.

48. Nothing in this Agreement will excuse the Defendants' compliance with any currently or subsequently effective provision of law or order of a regulator with authority over the Defendants that imposes additional obligations on them.

## J.    TERMINATION OF LITIGATION HOLD

49. The Parties agree that, as of the date of the dismissal of the Action, litigation is not anticipated concerning the matters described in the United States' Complaint. To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold.

EXHIBIT A

Nothing in this paragraph relieves any Party of any other obligations imposed by this Agreement.

### K.   DURATION, EXECUTION, AND OTHER TERMS

50.   This Agreement is effective on the date of signature of the last signatory to the Agreement.  The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

51.   The duration of this Agreement shall be for a period of five (5) years from the date of execution.

52.   Each Party shall bear its own legal and other costs incurred in connection with this litigation, including the preparation and performance of this Agreement, except as set forth in Paragraph 42.

53.   Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

54.   For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

55.   This Agreement constitutes the complete agreement between the Parties.  No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

56.   This Agreement is governed by and shall be interpreted under the laws of the United States.

EXHIBIT A

57.     The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the entities indicated below.

58.     This agreement is binding on the Parties and their transferees, heirs, and assigns.

59.     Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another Party, the performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another Party.

60.     This Agreement is a public document.  All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public and to the Defendants' issuance of public statements about this litigation and the subject matter hereof, subject to any applicable privacy laws.

61.     Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

62.     The Parties agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Agreement is illegal or invalid.

63.     This Agreement may be modified only with the written consent of the Parties.  Any modifications must be in writing and signed by the Parties through their authorized representatives.

EXHIBIT A
27

*For the United States of America:*

DATED: September 27, 2017

JEFFERSON B. SESSIONS III
Attorney General

SANDRA R. BROWN
Acting United States Attorney

JOHN M. GORE
Acting Assistant Attorney General

DOROTHY A. SCHOUTEN
Chief, Civil Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement
Section

JOANNA B. HULL
Chief, Civil Rights Section, Civil Division

ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair
Housing Program

MATTHEW E. NICKELL
Assistant United States Attorney
United States Attorney's Office
Central District of California
300 N. Los Angeles Street, Suite 7516
Los Angeles, CA 90012
Email: matthew.nickell@usdoj.gov
Telephone: 213-894-8805
Fax: 213-894-7819

AUDREY M. YAP
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW – NWB
Washington, D.C. 20530
Email: audrey.yap@usdoj.gov
Telephone: 202-305-0015
Fax: 202-514-1116

*For Westlake Services, LLC d/b/a Westlake Financial Services
and Wilshire Commercial Capital, LLC d/b/a Wilshire Consumer Credit*

DATED: 9-27-17

By:
IAN ANDERSON
Group President

26

<u>EXHIBIT A</u>

**IMPORTANT NOTICE AFFECTING MILITARY SERVICEMEMBERS'
RIGHTS AND PROTECTIONS AFFORDED UNDER THE SERVICEMEMBERS CIVIL
RELIEF ACT**

Attached to this notice you will find a waiver of rights and protections that may be applicable to you and your dependents pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3901, *et seq*. (the "SCRA"). The SCRA provides military personnel and their dependents with a wide range of legal and financial protections. Among other benefits and protections, the SCRA:

- Prohibits the repossession of a servicemember's motor vehicle without a court order, as long as a deposit or at least one installment payment was made while the borrower was not in military service.
- Upon notice by the servicemember, imposes a 6% maximum rate of interest that may be charged during military service on loans incurred before the servicemember began his or her current military service.
- Postpones court actions against servicemembers under certain circumstances.

If you choose to sign the attached waiver, [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT] will have the option to proceed with a repossession of your motor vehicle without the protections of the SCRA.  If you do not sign this waiver, [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT] will be required to provide you the protections of the SCRA if you took out your loan and made a down payment on the motor vehicle, or at least one payment on the loan, when you were not in military service.  Additionally, if [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT] takes you to court to repossess your motor vehicle, the court may take steps to ensure that a judgment is not entered against you if you are unable to appear.

**Before waiving these important statutory rights, you should consult an attorney regarding how best to exercise your rights or whether it is in your interest to waive these rights under the conditions offered by [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT].**

**For More Information:**

- CONSULT AN ATTORNEY: To fully understand your rights under the law, and before waiving your rights, you should consult an attorney.
- JAG / LEGAL ASSISTANCE: Servicemembers and their dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.
- MILITARY ONESOURCE: "Military OneSource" is the U.S. Department of Defense's information resource. Go to http://www.militaryonesource.com.

<u>EXHIBIT B</u>

**EMPLOYEE ACKNOWLEDGMENT**

      I acknowledge that on _____ _____, 20__, I was provided training regarding SCRA compliance and copies of the SCRA Policies and Procedures which are applicable to my duties.  I have read and understand these documents and have had my questions about these documents and the SCRA answered.  I understand my legal responsibilities and shall comply with those responsibilities.


_____
[PRINT NAME]


_____
[SIGNATURE]


_____
[JOB TITLE]

28

EXHIBIT A
30

EXHIBIT C-1

**DECLARATION**

I, [INSERT NAME], do hereby declare and state as follows:

1.      I owned a vehicle [THAT WAS OBTAINED THROUGH A LOAN WITH
        WESTLAKE FINANCIAL SERVICES or WAS PLEDGED AS SECURITY
        FOR A TITLE LOAN WITH WILSHIRE CONSUMER CREDIT], Loan Number
        [LOAN NUMBER]. My vehicle was repossessed.

2.      I obtained the loan on or about [LOAN FUNDING DATE].

3.      On or about [REPOSSESSION DATE], I **WAS** either:

        i.      on a covered period of military service; **OR**

        ii.     a member of a reserve component (Reserves or National Guard) and had
                received orders to report for a covered period of military service.

4.      Please consider the following additional information in support of this
        Declaration:

        _____

        _____

        _____

        _____

        _____

I confirm that the foregoing is true and correct.

        Executed this _____ day of _____, 20__.

                        SIGNATURE: _____

                        PRINT NAME: _____

29

EXHIBIT A
31

## APPENDIX REGARDING MILITARY SERVICE

As used in this Declaration, a "covered period of military service" is any of the following:

a)      Full-time active duty with the armed forces of the United States (Army, Navy, Air Force, Marine Corps, or Coast Guard);

b)      A period of active service with the National Guard: i) authorized by the President or the Secretary of Defense; ii) longer than thirty (30) consecutive days; iii) under orders issued under Section 502(f) of Title 32 of the United States Code; and iv) for the purpose of responding to a national emergency declared by the President and supported by federal funds;

c)      Active service as a commissioned officer of the Public Health Service or the National Oceanic and Atmospheric Administration; or

d)      A period of time during which I was a servicemember absent from duty on account of sickness, wounds, leave, or other lawful cause.

If you have any additional questions about whether your service constitutes a "covered period of military service" for purposes of this declaration, please contact the Department of Justice at 202-514-4713 and reference the Westlake SCRA motor vehicle case.

EXHIBIT A

EXHIBIT C-2

**RELEASE**

In consideration for the parties' agreement to the terms of the Settlement Agreement resolving the United States' allegations in United States v. Westlake Services, LLC, et al., Civil No. 2:17-cv-07125 (C.D. Cal.) and [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT]'s payment to me of $ [AMOUNT], I, [BORROWER'S NAME], hereby release and forever discharge all claims, arising prior to the date of this Release, related to the facts at issue in the litigation referenced above and related to alleged violations of Section 3952(a) or Section 3953 of the Servicemembers Civil Relief Act, that I may have against [WESTLAKE FINANCIAL SERVICES or WILSHIRE CONSUMER CREDIT] and all related entities, parents, predecessors, successors, and affiliates and all of its past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors or assigns. I do not release any claims that I may have against Credit Union Leasing of America, CULA Holdings, Inc., CULA, LLC or Western Funding Incorporated or any of Westlake Financial Services' subsidiaries other than Wilshire Consumer Credit.

The parties represent and warrant to each other, that the parties specifically understand and agree that the parties' settlement and compromise of claims and disputes regarding the retail installment contract or title loan and the vehicle is a compromise of disputed claims and that the existence of this Agreement or any payment made hereunder shall not be construed as an admission of liability of the allegations, claims or contentions of any party, and that there are no covenants, promises, undertakings or understanding between the parties outside of this Agreement except as specifically set forth herein.

Executed this _____ day of _____, 20__.

SIGNATURE: _____

PRINT NAME: _____

EXHIBIT A